IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| REX A. FAUTH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 04-0967-CV-W-GAF-SSA |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

ORDER

This case involves two applications made under the Social Security Act (the Act). The first is an application for disability insurance benefits under Title II of the Act, 42 U.S.C. §§ 401, *et seq*. The second is an application for supplemental security income (SSI) benefits based on disability under Title XVI of the Act, 42 U.S.C. §§ 1381, *et seq*.

On November 18, 2003, following a hearing, an administrative law judge (ALJ) rendered a decision in which she found that plaintiff was not under a "disability" at any time when he met the earnings requirement of the law, or at any other time through the date of the decision. On February 12, 2004, the Appeals Council of the Social Security Administration remanded plaintiff's case for evaluation of the state agency medical consultant opinions and additional consideration of plaintiff's past relevant work. On May 14, 2004, following a hearing, the ALJ again rendered a decision in which she found that plaintiff was not under a "disability" at any time when he met the earnings requirement of the law, or at any other time through the date of the decision. On August 20, 2004, the Appeals Council

denied plaintiff's request for review. Thus, the May 2004 decision of the ALJ stands as the final decision of the Commissioner.[1]

Plaintiff filed his application for disability benefits under Title II of the Social Security Act on May 31, 2001, and his application for SSI benefits under Title XVI of the Act on May 17, 2001. He alleged disability beginning December 31, 1998, due to his obesity, inability to read or write well, depression, back pain, and a heart murmur. Plaintiff was born in 1972 and was 26 years old on his alleged onset date of disability. Plaintiff had an eighth grade education and was classified as having a learning disability. Plaintiff's past relevant work consisted of work as a panel machine operator. He last worked in May 2000.

When reviewing the Commissioner's decision concerning disability benefits, courts may not decide facts anew, reweigh the evidence or substitute their judgment for that of the Commissioner. *See Brockman v. Sullivan*, 987 F.2d 1344, 1346 (8th Cir. 1993)(citing *Jelinek v. Bowen*, 870 F.2d 457, 458 (8th Cir. 1989)). Rather, the standard of appellate review of the Commissioner's decision is limited to a determination of whether the decision is supported by substantial evidence on the record as a whole. *See Sampson v. Apfel*, 165 F.3d 616, 618 (1999); *see also Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996); *Carlson v. Chater*, 74 F.3d 869, 871 (8th Cir. 1996); *Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir. 1995). Substantial evidence is that evidence which reasonable minds would accept as adequate to support the Commissioner's conclusion. *See Williams v. Sullivan*, 960 F.2d 86, 89 (8th Cir. 1992). An administrative decision is not subject to reversal simply because some

---

[1] Upon review of the record and applicable authority herein, the defendant's position is found to be controlling. Much of defendant's brief is adopted without quotation noted.

evidence may support the opposite conclusion. *See Gaddis v. Chater*, 76 F.3d 893, 895 (8th Cir. 1996); *see also Shannon*, 54 F.3d at 486; *Onstead v. Sullivan*, 962 F.2d 803, 804 (8th Cir. 1992).

To establish entitlement to benefits, plaintiff must show that he is unable to engage in any substantial gainful activity by reason of a medically determinable impairment which has lasted or can be expected to last for not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). The Supreme Court in *Barnhart v. Walton*, 535 U.S. 212 (2002), upheld the Commissioner's interpretation of this statutory definition which requires that the disability, and not only the impairment, must have existed or be expected to exist for 12 months.

For entitlement to Title II benefits, plaintiff has the additional burden of showing that he was disabled prior to the expiration of his insured status. *See Basinger v. Heckler*, 725 F.2d 1166, 1168 (8th Cir. 1984). Plaintiff's insured status expired on June 30, 1999.

The ALJ found that plaintiff had severe impairments, including obesity with various aches and pains, low average to borderline intellectual functioning with a learning disability, depression/dysthymia, and dependent personality traits/disorder. However, he was not found to have an impairment, or combination of impairments, listed in or medically equal to one contained in 20 C.F.R. § 404, Subpart P, Appendix 1, Regulations No. 4. The ALJ then found that as a result of his impairments, plaintiff's residual functional capacity was limited to work involving lifting up to 35 pounds and standing up to seven hours in an eight-hour workday. He was found not to be able to work with the public, limited to performing simple tasks, not able to perform math computations, or read more than basic words. This residual functional capacity did not preclude plaintiff's performance of his past relevant work as a panel machine operator. Plaintiff was found not to be disabled as defined in the Social Security Act.

3

Plaintiff alleges first that the ALJ did not properly evaluate his credibility. In *Polaski v. Heckler*, 739 F.2d 1320 (order) *supplemented*, 751 F.2d 943 (8th Cir. 1984), the court indicated an ALJ must consider, in addition to objective medical evidence and plaintiff's work record, any evidence relating to plaintiff's daily activities; duration, frequency, and intensity of pain; dosage, effectiveness, and side effects of medication; precipitating and aggravating factors; and functional restrictions. The ALJ specifically discussed the medical and opinion evidence, inconsistencies in plaintiff's statements, his lack of medical treatment, medication usage, activities of daily living, and poor work history, and found that plaintiff's subjective complaints were not entirely credible. Where conflicting allegations and claims exist, credibility findings are for the ALJ to make. *See Chamberlain v. Shalala*, 47 F.3d 1489, 1494 (8th Cir. 1995).

The ALJ noted that plaintiff's testimony at both hearings was inconsistent and conflicting and thus, not very credible. Plaintiff asserts that his doctors have said he makes inconsistent statements because he has very little insight; moreover, plaintiff has learning difficulties and is immature in his behavior. Plaintiff has not disagreed that his statements have been inconsistent; he has provided explanations for his inconsistencies. Nevertheless, the ALJ has to evaluate credibility on the record as a whole and may discount subjective complaints of pain if inconsistencies are apparent in the evidence as a whole. *See Gray v. Apfel*, 192 F.3d 799, 803 (8th Cir. 1999). The ALJ noted that plaintiff testified at his first hearing that he left his job at a bowling alley because he did not have a way to get to work. Upon questioning by his attorney at his second hearing, however, he indicated he could not work at the snack bar of the bowling alley because so much of the work was computerized now and he was not very good with computers. He did not indicate he could not perform the job because of the standing

4

requirements, as he reported to Dr. Smith. Moreover, and as noted by the ALJ, plaintiff said he was asked to leave his job as a panel machine operator, making playing cards for the casinos, because he did not show up or call work for two days, not because he could not perform his job. Courts consider it significant when claimants leave work for reasons other than their disability. *See Browning v. Sullivan*, 958 F.2d 817, 821 (8th Cir. 1992).

The ALJ noted that plaintiff did not seek regular treatment for his depression, which indicated it was not a disabling impairment. Plaintiff asserts the ALJ ignored that plaintiff testified he was out of town and that's why he did not see a psychiatrist for over a year. However, the ALJ noted that plaintiff testified he moved away from the area after his last appointment with Dr. Butts on September 16, 2002, but the ALJ also noted that plaintiff testified to only being away a couple of months, and he could have seen Dr. Butts between September 2002 and October 2003. Plaintiff testified that he told Dr. Butts he had moved out of town, however, plaintiff missed two scheduled appointments with Dr. Butts, upon which the doctor reported that "nothing was heard from him" as to why he did not show up for his medical check-ups scheduled in February and March 2003. Plaintiff's failure to seek regular treatment indicates that his condition was not disabling as alleged. The Eighth Circuit has noted that the absence of any evidence of ongoing counseling or psychiatric treatment or of deterioration or change in plaintiff's mental capabilities disfavors a finding of disability. *See Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000)(citing *Dixon v. Sullivan*, 905 F.2d 237, 238 (8th Cir. 1990)).

Plaintiff asserts the ALJ should not have found that his disabling complaints were not credible because he only took over-the-counter Tylenol for his pain, because his doctor increased his Zoloft medication in 2001. However, Zoloft is for depression and the ALJ was indicating that plaintiff's pain

5

was not disabling due to his use of only over-the-counter pain medication. Use of only over-the-counter medication contradicts a claimant's complaints of disabling pain. *See Walker v. Shalala*, 993 F.2d 630 (8th Cir. 1993); *see also Starr v. Sullivan*, 981 F.2d 1006 (8th Cir. 1992). Moreover, after plaintiff's doctor increased his Zoloft medication in 2001, plaintiff then failed to take his Zoloft medication for over a year when he stopped following up with Dr. Butt, from September 2002 through October 2003. Apparently, plaintiff did not take his Zoloft medication on a continual basis. The ALJ noted that plaintiff's non-compliance weighed against his credibility. An ALJ may properly determine that a claimant's noncompliance with treatment weighs against his credibility. *See Holley v. Massanari*, 253 F.3d 1088, 1092 (8th Cir. 2001).

Plaintiff asserts that the ALJ should not have found his lack of motivation lessened his credibility, as it was due to what Dr. Edmisten described as his immature and impulsive behavior as well as his poor insight and judgment. However, the ALJ found that plaintiff's poor work record demonstrated his lack of motivation, which undermined his credibility. *See Comstock v. Chater*, 91 F.3d 1143, 1147 (8th Cir. 1996)(Plaintiff's prior work history characterized by fairly low earnings and significant breaks in employment casts doubt on his credibility).

Additionally, plaintiff 's activities demonstrate that he was not as limited as he alleged. Plaintiff told Dr. Crowell that he assisted his mother with the household chores. In a questionnaire dated August 26, 2000, plaintiff reported that he walked seven days a week for exercise. In another claimant questionnaire, plaintiff reported that he left his home three times per week to go to the store for an hour, he drove, watched television, listened to music, and put together model cars. He said he could cook "everything" and also helped clean the house. Inconsistencies in the record, including a claimant's

activities, can show that a claimant is not credible. *See Jernigan v. Sullivan*, 948 F.2d 1070, 1073-74 (8th Cir. 1991).

It is well established that a sufficient basis exists to discount subjective complaints of pain where the complaints are inconsistent with the record as a whole. *See e.g., Hutsell v. Sullivan*, 892 F.2d 747, 750 (8th Cir. 1989). Because the Commissioner articulated the inconsistencies upon which she relied in discrediting plaintiff's subjective complaints, and because those inconsistencies are supported by the record, her credibility finding is entitled to be affirmed. *Id*.

Plaintiff also asserts the ALJ erred in not ordering a consultative examination as outlined in the Appeals Council's Remand Order. However, the Appeals Council remanded the case so the ALJ could evaluate the state agency medical opinions and for further consideration of plaintiff's past relevant work. Within that order, the ALJ was to obtain updated medical records from claimant's treating and other medical sources, as appropriate, and she was directed to obtain a consultative physical or mental status examination if the additional evidence did not clearly depict plaintiff's limitations. In this regard, the Eighth Circuit has determined that the ALJ is required to order medical examinations and tests only if the medical records presented to her do not give sufficient medical evidence to determine whether the claimant is disabled. *See Barrett v. Shalala*, 38 F.3d 1019, 1023 (8th Cir. 1994); *see also* 20 C.F.R. §§ 404.1519a(b) and 416.919a(b). "[A]n ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision." *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995) (quoting *Naber v. Shalala*, 22 F.3d 186, 189 (8th Cir. 1994)). Case law and regulations indicate that the ALJ has complete discretion over the ordering of a consultative examination and additional tests, and such examinations

7

are only required when necessary to make an informed disability decision. *See* 20 C.F.R. § 416.919a (1996); *see also Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984).

Plaintiff notes that after the Appeals Council remand, his only medical treatment was one visit with Dr. Butt in October 2003 and, therefore, he requested a consultative examination to clearly determine his limitations. However, there was only one additional medical record in the file because plaintiff had not pursued further treatment, not because the ALJ erred in failing to request the proper documentation. Plaintiff's failure to pursue treatment does not require the government to pay for further evaluation. Moreover, there was sufficient evidence for the ALJ to determine plaintiff's limitations and, therefore, she had no need to order a mental status examination. The ALJ found that plaintiff could lift up to 35 pounds, which plaintiff himself acknowledged he could do. The ALJ noted that plaintiff had previously been able to stand seven hours a day in his past jobs and did not have any additional medical impairment that would limit his ability to stand. In addition, Dr. Smith noted that plaintiff had no difficulty sitting, standing, walking, lifting, carrying heavy objects, hearing, speaking, or traveling.

The ALJ also found that plaintiff could not work with the public, could only perform simple tasks, and could not perform math computations or read more than basic words. Plaintiff testified to concentration problems and problems relating to other people. He also said he could only read basic words and perform easy math. Dr. Crowell also noted that plaintiff had only mild deficits in social interaction and did well on a mini-mental status examination. Plaintiff could spell the word "world" frontwards and backwards. There was substantial evidence in the record to support the ALJ's residual functional capacity finding. The ALJ was not required to order a consultative examination. An ALJ has broad latitude in determining whether to order a consultative examination or testing. *See Diaz v.*

8

*Secretary of Health & Human Servs.*, 898 F.2d 774, 778 (10th Cir. 1990). Full inquiry does not require a consultative examination at government expense unless the record establishes that such an examination is necessary to enable the ALJ to make the disability decision. *See Turner v. Califano*, 563 F.3d 669, 671 (5th Cir. 1977).

A claimant is not disabled if he can perform past relevant work as he described it or if he can perform it as it is generally performed. *See Jones v. Chater*, 86 F.3d 823, 826 (8th Cir. 1996). In this regard, plaintiff argues that the ALJ did not properly compare his residual functional capacity with the requirements of his past relevant work. However, the ALJ obtained testimony from a vocational expert to support her conclusion that plaintiff could return to his past relevant work. The Eighth Circuit has implicitly approved of using vocational expert testimony at step four of the sequential evaluation process to show that a claimant can return to his past relevant work. *See Haynes v. Shalala*, 26 F.3d 812, 815 (8th Cir. 1994).

In addition, in *Battles v. Sullivan*, 902 F.2d 657, 659 (8th Cir. 1990), the court held that if, although not developed in detail, the record of a claimant's past relevant work contains enough information on his past work for the ALJ to make a determination on the claimant's ability to return to such work, the ALJ's decision concerning a claimant's ability to perform his past relevant work will be affirmed. *See also Meyer v. Callahan*, 980 F. Supp. 1069, 1080 (W.D. Mo. 1997). In the instant case, there is sufficient information for the ALJ to determine that plaintiff can return to his past relevant work. Plaintiff reported what the requirements were for his job as a panel machine operator. Moreover, the vocational expert was aware of how the job is performed in the national economy. The ALJ posed a hypothetical question to the vocational expert regarding a person of plaintiff's age,

9

education, past relevant work, and residual functional capacity. Testimony from a vocational expert based on a properly phrased hypothetical question constitutes substantial evidence. *See Cruze v. Chater*, 85 F.3d 1320, 1323 (8th Cir. 1996).

Plaintiff argues that the ALJ did not give proper weight to his treating physician, Dr. Edmisten, because she did not include Dr. Edmisten's findings in her hypothetical question to the vocational expert of plaintiff's impaired critical and social judgments, as well as his impulsive and immature behavior that caused him to walk off jobs. Nevertheless, plaintiff himself testified that he had not walked off jobs and never told the doctor that. The ALJ accounted for other limitations of plaintiff by limiting him to not working with the public, performing simple tasks, and not performing math computations or reading more than basic words. While the hypothetical question must set forth all the claimant's limitations, it need not use specific diagnostic or symptomatic terms where other descriptive terms can adequately define the claimant's impairments. *See Roe v. Chater*, 92 F.3d 672, 676 (8th Cir. 1996). The ALJ's hypothetical question need only capture the concrete consequences that flow from plaintiff's conditions. *Id*.

Plaintiff said that he demonstrated that he could not return to his past relevant work because he testified he would have interference of suicidal thoughts and would require repeated instructions due to his learning disability. However, the ALJ did not find plaintiff's complaints entirely credible. Moreover, plaintiff told Dr. Edmisten that he had experienced suicidal thoughts for seven years, and plaintiff's learning disability dates back to his school days. Therefore, these are problems that plaintiff had when he was working previously. If an individual has worked with an impairment, absent any significant deterioration, he cannot claim it as disabling at present. *See Orrick v. Sullivan*, 966 F.2d 368, 370

(8th Cir. 1992); *see also Vaughn v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995) (Plaintiff's past ability to perform her job undermines her claim that she is now unable to work due to those same impairments).

Plaintiff also stated that he could not work because Drs. Edmisten and Butt noted that he reported a history of walking off jobs. However, as noted previously, plaintiff testified that he has never walked off a job and never made that statement. Plaintiff also reported that an initial screening at CMHS notes that he cannot hold a job. A review of that report reflects that plaintiff made that statement, it was not an opinion held by staff. In either event, the ALJ considered the evidence in the record as a whole and determined plaintiff's residual functional capacity. She posed these limitations in a hypothetical question to the vocational expert. A hypothetical question is sufficient it if sets forth impairments supported by substantial evidence and accepted as true by the ALJ. *See Hunt v. Massanari*, 250 F.3d 622, 625 (8th Cir. 2001). The hypothetical was therefore proper, and the vocational expert's related opinion about plaintiff's ability to perform his past relevant work as a panel machine operator constituted substantial evidence supporting the denial of benefits. *See Roberts v. Apfel*, 222 F.3d 466, 471 (8th Cir. 2000). Plaintiff did not sustain his burden of proving that he was incapable of returning to his past relevant work. *See Wiseman v. Sullivan*, 905 F.2d 1153, 1156 (8th Cir. 1990).

WHEREFORE, for the reasons stated herein, the Commissioner's decision is affirmed.

/s/ Gary A. Fenner
GARY A. FENNER, JUDGE
United States District Court

11

Case 4:04-cv-00967-GAF   Document 12   Filed 07/18/05   Page 11 of 12

DATED: July 18, 2005